UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) NO. 4:25 CR 00483 SEP |
| JOHN J. DIEHL, JR., | ) ) ) |
| Defendant. | ) ) |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Comes now the United States of America, by and through Thomas C. Albus, United States Attorney for the Eastern District of Missouri, and Hal Goldsmith, Assistant United States Attorney for said District and, for its Sentencing Memorandum, states to this Honorable Court as follows:

1. Pursuant to the applicable Statutes and Sentencing Commission Guidelines, and based upon Defendant's underlying criminal conduct here, Defendant John J. Diehl, Jr.'s criminal conduct calls for a fair and just punishment. Application of the United States Sentencing Guidelines here, even after credits for Acceptance of Responsibility and Zero Point Offender Status, advises a sentence of 21 – 27 months' imprisonment. This is based upon defendant's substantial criminal conduct here, involving the receipt and misuse of approximately $380,000.00 in fraudulently obtained disaster relief funds; funds set aside by the United States Congress and intended to support businesses and their employees during the COVID-19 pandemic. It is the position of the United States that a sentence within the advisory Sentencing Commission Guidelines is appropriate here, based upon the facts and circumstances presented.

2. Title 18, United States Code, Section 3553(a) sets out the factors this Court should consider in fashioning an appropriate sentence. The first such factor to be considered is the nature

of the offense, 18 U.S.C. 3553(a)(l).  In this case, Defendant Diehl not only submitted a false application for an Economic Injury Disaster Loan ("EIDL) to the United States Small Business Administration, but he subsequently submitted a second false application for modification of that original EIDL loan.  Through his two false applications, Defendant Diehl obtained the original loan and the loan modification in the amounts of $94,900.00 and $285,000.00 respectively, totaling $$379,900.00.  Defendant Diehl did not use any portion of those ill-gotten funds for their intended purpose of "working capital to alleviate economic injury" caused by the COVID Pandemic. In fact, the very first $1,000.00 in loan proceeds Defendant Diehl obtained was used to pay for his own personal country club dues and fees, unrelated to the business of his law firm.  Defendant Diehl then used approximately $200,000.00 of those fraudulently obtained loan funds to improperly fund his personal law firm defined benefit plan, of which he was the sole participant.  Defendant Diehl used the remaining fraudulently obtained loan funds to cover impermissible personal expenses, including: paying off a civil settlement related to his time as Speaker of the Missouri House of Representatives; making payments on personal automobiles including a Tesla, an Audi and a Jeep; making payments on his personal residence mortgage; making payments to a pool maintenance company for expenses related to the pool at his personal residence; making additional payments to his country club for personal dues and expenses; and, cash withdrawals to cover additional personal expenses.  These funds were intended by Congress to aid small businesses and their employees weather the extraordinarily harsh economic circumstances presented by the Covid 19 pandemic. The record is devoid of any evidence, or even the suggestion, that Defendant Diehl or his sole law practice suffered such harm.  By any measure, Defendant Diehl's criminal conduct was substantial, and should merit a significant punishment.

       3.       This Court should also consider the history and characteristics of the Defendant.

18 U.S.C. 3553(a)(1). Defendant is a highly educated individual, having attended a well regarded private high school in the St. Louis area, DeSmet Jesuit High School, before attending Washington University and ultimately earning a Bachelor of Arts degree in political science from the University of Missouri at Columbia. Defendant earned his law degree from St. Louis University before engaging in a lengthy career as a real estate attorney and politician. Defendant Diehl served as an elected Alderman for Town and Country, Missouri, and served as the Chairman of the St. Louis County Board of Election Commissioners. Defendant was elected to serve in the Missouri House of Representatives during 2008, and began service as Speaker of the House during January 2015. However, due to a very public scandal involving his improper relationship with a university freshman serving as an intern for the House of Representatives, Defendant resigned his position as Speaker and as a Representative during May 2015. Through his education and public office, Defendant had every privilege and opportunity, and to put it bluntly, he knew better than to engage in the charged fraud scheme.

4. Further as to the history and characteristics of Defendant Diehl, it should also be noted that on May 23, 2023, Defendant entered into a Consent Order with the Missouri Ethics Commission wherein Defendant consented to a number of findings, including a finding that he had improperly used $6,762.70 of campaign committee funds to pay for improper personal expenses unrelated to any political campaign. Defendant also consented to a finding that he had failed to report a number of additional expenditures of campaign committee funds, including at least $28,700.00 for improper personal expenses. A fee in the amount of $47,392.00 was levied against Defendant relative to his various ethics violations.

5. When all of the facts and circumstances are considered here, including Defendant's history and characteristics, his criminal conduct has to be viewed as substantial.

6. This Court's sentence should also afford adequate deterrence to criminal conduct, 18 U.S.C. 3553(a)(2)(B). The United States is confident it does not have to educate this Court on the scope and extent of PPP fraud, both at the national level and here in the Eastern District of Missouri. To put it mildly, the amount of funds which have been stolen and misappropriated from the United States Congress's well-intentioned disaster relief programs is monumental, and staggering in its extent and public harm. Here in the Eastern District of Missouri, the amount of fraud carried out by Defendant Diehl, approximately $380,000.00, is clearly within the range of similarly situated cases where Guideline sentences have been imposed. This Court should fashion an appropriate sentence and punishment not only to deter this Defendant from future criminal conduct, but in order to deter other individuals in similar positions from committing similar crimes. Unfortunately, one need only look to the many recent prosecutions right here in the Eastern District of Missouri involving disaster relief fraud to grasp the significance of these types of crimes, and the need for adequate punishment to deter these types of defendants and others.

7. The United States is aware that Defendant has made restitution in this case. However, Defendant's suggestion that this payment amounts to "extraordinary efforts at restitution," such that this Court should consider it in fashioning a non-custodial sentence, is misplaced under the facts and circumstances here. It is abundantly clear from the record before this Court that Defendant is a man of great and substantial means, such that his payment of the mandatory restitution in this case, prior to this Court's inevitable Order to do so, should not qualify as an extraordinary effort on his part. This is not a case where the defendant took on additional employment, sold valuable assets, or cashed in his life savings in order to make the victim whole. That type of conduct may potentially qualify as "extraordinary efforts." It is simply not the case here, and the United States disagrees that Defendant's pre-payment of his mandatory restitution

4

should be considered by this Court as extraordinary, and the United States suggests that it is not an appropriate basis for the substantial leniency in sentencing which this Defendant requests.

8.      Defendant has an advisory guideline sentence range under the United States Sentencing Commission Guidelines of 21 – 27 months in prison.  It is the government's position that justice and fairness require such a sentence in this case.  Such a sentence by this Court will adequately reflect the seriousness of the offense, promote respect for the law, and provide just punishment for defendant's criminal offenses as is required by 18 U.S.C. 3553(a)(2)(A).

WHEREFORE, the United States of America prays that this Honorable Court sentence Defendant to a term of imprisonment within the advisory sentencing guidelines as appropriate under the facts and circumstances presented here, and for such other relief as this Court deems appropriate and just under the circumstances.

Respectfully submitted,

THOMAS C. ALBUS
United States Attorney

*/s/Hal Goldsmith*
HAL GOLDSMITH, #32984
Assistant United States Attorney
111 S. 10th Street, Room 20.331
St. Louis, Missouri 63102
(314) 539-2200

**CERTIFICATE OF SERVICE**

I hereby certify that on February 23, 2026, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the counsel for defendant.

/s/ *Hal Goldsmith*
HAL GOLDSMITH
Assistant United States Attorney